**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

LORI TREADWAY, as Administrator of the
Estates of LEE ROY DANCY,

     Plaintiffs,

v.            CIVIL ACTION NO. 5:12-cv-00049

WEST VIRGINIA REGIONAL JAIL AND
CORRECTIONAL FACILITY AUTHORITY,

     Defendant/Third-Party Plaintiff,

v.

PRIMECARE MEDICAL OF WEST VIRGINIA, INC.,

     Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Motion to Dismiss Plaintiff's Amended Complaint On Behalf of Defendant, Primecare Medical of West Virginia, Inc. and Alternative Motion for Summary Judgment* (Document 14), the *Motion to Dismiss Defendant/Third-Party Plaintiff West Virginia Regional Jail and Correctional Facility Authority's Third-Party Complaint Against Primecare of West Virginia, Inc. on Behalf of Third-Party Defendant, Primecare Medical of West Virginia, Inc. and Alternative Motion for Summary Judgment* ("Mot. to Dismiss Third-Party Compl.") (Document 16), and *Defendant/Third-Party Plaintiff West Virginia Regional Jail and Correctional Facility Authority's Response to Third-Party Defendant Primecare of West Virginia, Inc.'s Motion to Dismiss and Cross Motion for Summary Judgment* (Document 20).

After careful consideration of these motions, the memoranda submitted in support thereof and in opposition thereto, the Court finds that Primecare's motion to dismiss Plaintiff's amended complaint should be granted and that its motion against the Defendant/Third-Party Plaintiff should be denied.   Finally, the Court finds that Defendant/Third-Party Plaintiff's cross motion should be denied.

*I.*

On July 20, 2010, Plaintiff, Administrator of the Estate of Lee Roy Dancy, initiated this civil action in the Circuit Court of Raleigh County, West Virginia, by alleging that Lee Roy Dancy was in the care and custody of Defendant West Virginia Regional Jail and Correctional Facility Authority ("WVCFA") at the Southern Regional Jail when he died.   (Notice of Removal, Ex. C, Complaint (Document 1-3) at 1-3.)[1]   Plaintiff further alleges that the decedent requested medical attention and exhibited obvious signs of medical distress several days before his death, but was "systematically denied medical attention repeatedly for numerous days and numerous times for the condition which resulted in his death."   (*Id.* ¶¶ 3-6.)   On January 27, 2007, the decedent suffered a medical crisis while incarcerated and died.   Plaintiff alleges that "[t]he wrongful act, neglect and/or default by the [D]efendant . . . and by and through its agents directly and proximately resulted in the death of the decedent."   (*Id.* ¶ 8.)   The Complaint includes an averment that the West Virginia Attorney General's office and the WVCFA received a notification of intent to file suit, pursuant to W. Va. Code § 55-17-3(a)(1), on June 2, 2010.   (*Id.* ¶¶ 10-11.)

---

1    Defendant WVCFA asserts in its Notice of Removal that Plaintiff initially brought this claim on or about May 5, 2009, in the Circuit Court of Raleigh County.   However, the complaint was dismissed on Defendant's motion for Plaintiff's failure to comply with pre-suit filing requirement with respect to actions against agencies within the purview of W. Va. Code § 55-17-3(a)(1).   Plaintiff invoked the savings statute of W. Va. Code § 55-2-18 to initiate the 2010 civil action in state court.   Defendant WVCFA does not challenge the use of the savings statute.

While the action was pending in state court, Defendant WVCFA moved to dismiss the Complaint.[2]   (Notice of Removal, Ex. E, Raleigh County Circuit Court Docket Detail (Document 1-5) at 2.)   Thereafter, on December 23, 2011, Plaintiff sought leave to file an amended complaint to add a third party defendant. (*Id.*)   In the Amended Complaint, Plaintiff incorporates her previous allegations and alleges that the decedent told her he requested transfer to a hospital, but the staff of the Southern Regional Jail told him "they would tell him when he need[ed] to be taken to the hospital."   (Notice of Removal, Ex. D, Amended Complaint (Document 1-4), ¶ 5.) Additionally, Plaintiff alleges that Defendant WVCFA contracts out its medical services to Primecare and that it was the actions or inactions of the Southern Regional Jail staff, acting on behalf of the WVCFA, along with Primecare, that "rise to the level of medical malpractice[.]" (*Id.* ¶ 7.)   Plaintiff avers that the Defendants "fail[ed] to send the decedent to the hospital . . . to properly diagnose the decedent, and . . . to properly address his request for hospitalization." (*Id.*) Plaintiff also avers that the "medical facilities offered at Southern Regional Jail were less than adequate, as evidenced by the fact that the decedent was being held in a visitation room, not in sick bay."   (*Id.* ¶ 6.)   On January 11, 2012, the WVCFA removed the civil action to this court by asserting that Plaintiff's Amended Complaint included a claim that invoked this Court's federal question jurisdiction.   The Court observes that the circuit court did not address the pending motion for leave to file the amended complaint prior to the removal.

---

2    In its opposition to Primecare's motion to dismiss the Third-Party Complaint, WVCFA explains that the state court conducted a hearing on its motion to dismiss, wherein WVCFA made an oral motion for a more definite statement in order to determine the specific allegations against the WVCFA given that Plaintiff had not included in the complaint the wrongful act which allegedly led to the death of the decedent nor which employee at the Southern Regional Jail denied his medical attention. (Defendant/Third-Party Plaintiff West Virginia Regional Jail and Correctional Facility Authority's Response to Third-Party Defendant Primecare of West Virginia, Inc.'s Motion to Dismiss and Cross Motion for Summary Judgment ("WVCFA Resp.") (Document 20) at 2-3.)   WVCFA asserts that the state court granted its oral motion and permitted Plaintiff additional time to conduct discovery in order to gather information to amend her complaint. (*Id.* at 3.)   Thereafter, Plaintiff filed the amended pleading on December 22, 2011.

Subsequent to the removal, Defendant WVCFA sought leave to file its own third-party complaint against Primecare Medical of West Virginia, Inc. (Document 9).  On May 24, 2012, this Court granted the motion. (Order (Document 10)).  In the contemporaneously filed Third Party Complaint, Defendant WVCFA alleges that it entered into a contract whereby Primecare agreed to provide medical services in all regional jails in West Virginia; that "[t]o the extent Plaintiff has alleged damages as a result of the conduct attributed to Primecare, [the WVCFA] asserts that the damages and injuries are the proximate cause of the acts and/or omissions of Primecare"; and that "[t]o the extent that a jury would find that Primecare's actions or inactions were a contributing factor to this incident . . . Primecare owes [WVCFA] a duty of indemnification and contribution based upon, but not limited to, contractual, statutory or common law – for any judgment that may be rendered against them in this action." (Defendant/Third-Party Plaintiff West Virginia Regional Jail and Correctional Facility Authority's Third-Party Complaint Against Primecare Medical of West Virginia, Inc. ("Third-Party Compl.") (Document 8), ¶¶ 5-7.) Thereafter, Primecare moved in the pending motion to dismiss both Plaintiff's Amended Complaint and Defendant WVCFA's Third-Party Complaint for those litigants' failure to comply with the MPLA.  While Plaintiff did not oppose the motion against her claim, WVCFA refutes Primecare's assertion that its claim is governed by the MPLA.   WVCFA also moves for summary judgment to enforce the terms of its contractual indemnification.  (WVCFA's Resp. at 7.)   The Court will consider the three motions below.

*II.*

In the motions, WVCFA seeks summary judgment while Primecare pursues two alternative paths of relief: dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil

4

Procedure for Plaintiff's or WVCFA's failure to state a claim, or summary judgment pursuant to Rule 56.   A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading.   *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).   In *Ashcroft v. Iqbal*, the United States Supreme Court stated that to survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).   "A claim has facial plausibility when [a party] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." (*Id.*)   The plausibility standard "asks for more than a sheer possibility that a [party] has acted unlawfully." (*Id.*)   Rather, "[i]t requires [a party] to articulate facts, when accepted as true, that 'show' that [the party] has stated a claim entitling [them] to relief[.]" *Francis*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 557).   Such "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.   "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.   However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]"– "that the pleader is entitled to relief."   *Id.* (quoting Fed.R.Civ.P. 8(a)(2)).

With respect to a challenge of this Court's jurisdiction, the Fourth Circuit, in *Adams v. Bain*, 697 F.2d 1213 (4th Cir.1982), described two distinct ways in which a defendant may challenge subject matter jurisdiction:

> First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. Second, it may be contended that the jurisdictional allegations of the complaint were not true. A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations.

*Adams*, 697 F.2d at 1219 (footnote omitted); *see also Campbell v. United States*, Civil Action No.2:05-cv-956, 2009 WL 914568, *2 (S.D. W. Va. Apr. 2, 2009). "A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment." *CSX Transp. v. Gilkison*, Civil Action No. 5:05CV202, 2009 WL 426265, * 2 (N.D. W. Va. Feb. 19, 2009) (citing *Adams*, 697 F.2d at 1219; *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975)).

Finally, the well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986). The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23. A "material fact" is a fact that might affect the outcome of a party's case. *See Anderson*, 477 U.S. at 248. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. (*Id*.) Rule 56 of the Federal Rules of Civil Procedure requires that,

6

> [a] party asserting that a fact cannot be or is genuinely disputed must
> support the assertion by:
>
>> (A) citing to particular parts of materials in the record,
>> including depositions, documents, electronically stored
>> information, affidavits or declarations, stipulations . . .
>> admissions, interrogatory answers or other materials; or
>>
>> (B) showing that the materials cited do not establish the
>> absence or presence of a genuine dispute, or that an adverse
>> party cannot produce admissible evidence to support the
>> fact.

Fed.R.Civ.P. 56(c)(1).

### III.

As an initial matter, the Court finds that no court has ever granted Plaintiff leave to file the amended pleading. (*See* Notice of Removal, Ex. D, Motion for Leave to File An Amended Complaint to Add Third Party Defendant (Document 1-4) at 5-7.   This Court has reviewed the entire docket in this case, including the materials filed in the Raleigh County Circuit Court, and finds that no party has opposed Plaintiff's motion for leave to file an Amended Complaint. Consequently, upon consideration of the claims alleged in the Amended Complaint, the Court will construe Plaintiff's motion as one to amend the complaint to add Primecare as a party defendant. Upon consideration of Rule 15 of the Federal Rules of Civil Procedure and in the interest of justice, the Court does hereby order that Plaintiff's request for leave to file the Amended Complaint **be granted.**

### IV.

The Court will first consider Primecare's challenge to Plaintiff's Amended Complaint. Primecare moves for dismissal of this amended pleading by arguing that: (1) the Amended Complaint is governed by the provisions of the West Virginia Medical Professional Liability Act

("MPLA"), W. Va. Code § 55-7B-1 *et seq*., and (2) Plaintiff failed to comply with the pre-suit requirements of the MPLA by failing to serve it with a notice of claim and a screening certificate of merit at least thirty days before filing the lawsuit.   (Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint on Behalf of Defendant, Primecare Medical of West Virginia, Inc., and Alternative Motion for Summary Judgment ("Primecare's First Mem.") (Document 15) at 1-6).   According to Primecare, Plaintiff's failure to comply with the applicable statute means that this Court lacks subject matter jurisdiction over the claim against Primecare. (*Id*. at 6.)   Primecare also argues that dismissal is warranted because Plaintiff failed to serve it with the Amended Complaint within 120 days after its filing. (*Id*. at 6-7.)   To date, Plaintiff has not filed an opposition or other response to the motion.

In West Virginia, "[c]laims of professional negligence arising from health care practices are generally governed by the Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1, et seq." (*Banfi v. American Hosp. for Rehabilitation*, 529 S.E.2d 600, 605 (W. Va. 2000)).   Pursuant to West Virginia law, a plaintiff asserting a medical negligence claim is required to prove that:

> (a) the health care provider failed to exercise the degree of care, skill and learning required or expected of a reasonably, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
> (b) such failure was a proximate cause of the injury.

W. Va. Code § 55-7B-3.   Additionally, if the claim involves allegations that a plaintiff was not properly diagnosed/treated or that the healthcare provider proximately caused the plaintiff's injuries or an assessment of the same, expert testimony may be required.   (W. Va. Code § 55-7B-7) ("The applicable standard of care and a defendant's failure to meet the standard of care,

8

if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required."); (*Banfi*, 529 S.E.2d at 605-06).   Furthermore, West Virginia law requires that certain pre-filing prerequisites be met before a health care provider may be sued:

> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

W. Va. Code, § 55-7B-6(b).   The primary purpose of requiring a pre-suit notice of claim and screening certificate of merit: is (1) to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims. (W. Va. Code § 55-7B-6; *Hinchman v. Gillette*, 618 S.E.2d 387, 394 (W. Va. 2005)).

The Court is persuaded, just as Primecare asserts, that Plaintiff's claim against Primecare is fatally flawed.   Plaintiff has alleged, albeit in an inartfully pled Amended Complaint, that the

Southern Regional Jail staff "acting on behalf of [WVCFA] along with Primecare," failed to send the decedent to the hospital, properly diagnose him and address his request for hospitalization. (*See* Am. Compl. (Document 1-4), ¶ 7.)  The failure to diagnose or timely treat an injured party assuredly implicates a medical malpractice claim relevant to the MPLA.   As such, Plaintiff should have adhered to the pre-filing requirements.   Inasmuch as Plaintiff has not alleged or demonstrated that she sent a notice of the lawsuit to Primecare or demonstrated in any pleading that a screening certificate of merit has been obtained and provided to Primecare, the Court finds Plaintiff's allegations against Primecare critically lacking.   Expert testimony is necessary to support any finding that the medical treatment provided or denied by the staff at the Southern Regional Jail fell below the applicable standard of care. Plaintiff offers no pleading, affidavit or declaration from any medical professional establishing the applicable standard of care and treatment for the decedent's ailment or the injuries he allegedly suffered as a result of Defendants' actions or inactions.   Moreover, Plaintiff's complaint is devoid of any factual allegation regarding the nature of the decedent's medical distress or the cause of his death.   Consequently, the Court is left with no means by which to consider whether the decedent's condition was of such a nature that a certificate of merit is not required because the medical ailment involved the common knowledge and experience of lay persons as to be considered a well-established legal theory of liability. (*Banfi*, 529 S.E.2d 600) (expert testimony is not required where the "lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience.") Additionally, with respect to claims "based upon a well-established legal theory of liability," the MPLA provides:

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55–7B–6(c).   Plaintiff has not availed herself of the use of this statutory exception to obtaining a screening certificate of merit.   Therefore, Plaintiff is not exempt from the requirement of the screening certificate of merit.

Although West Virginia courts caution against certain dismissals of causes of action based on the failure to comply with the screening certificates of merit (*Westmoreland v. Vaidya*, 664 S.E.2d 90 (W. Va. 2008)), this Court finds that a dismissal with leave to permit Plaintiff to obtain a certificate of merit is not warranted in this case.   This is so where this Plaintiff has been on notice of the need for fulfilling pre-filing requirements since 2009 when she initially sought relief against the WVCFA, and since 2011 when she sought relief as against Primecare.   Moreover, this motion to dismiss has been pending since June 22, 2012, and Plaintiff has not sought to oppose or challenge the motion or demonstrate a good faith basis by obtaining the certificate of merit.   The Court has also considered that this Plaintiff has previously had her claim dismissed in 2009 for failing to adhere to a pre-filing requirement.   Plaintiff, who has been represented by counsel throughout this proceeding both in this Court and in the state court, has been put on notice to comply with pre-filing requirements.   The West Virginia Supreme Court of Appeals in *Gray v. Mena* cautioned "all litigants preparing a complaint in such matters to be diligent in adhering to the requirements of the Medical Professional Liability Act where the healthcare provider's action could possibly be construed as having occurred within the context of the rendering of health care

11

services." (*Gray v. Mena*, 625 S.E.2d 326, 332 (W. Va. 2005) (court affirming circuit court's determination that a patient's assault and battery claim against a physician was governed by the MPLA, but declined the harsh penalty of dismissal "[g]iven the newness of the statute [which had not been subjected to extensive judicial analysis] and party's good faith "legitimate judgment that the case could be framed as an assault and battery civil action, rather than a medical malpractice action.")  The court desired litigant to "err on the side of caution by complying with the requirements of the [MPLA] if any doubt exists [with respect to whether their claim is governed by the MPLA]" and emphasized that it could not "assure future litigants who fail to comply with the requirements of the [MPLA] that dismissal can be avoided."  (*Id*. at 333.)  In this case, there is little doubt that Plaintiff's claim against Primecare would invoke the MPLA.  Further, the "newness" of the MPLA is no longer an issue.  Therefore, upon consideration of the length of time this case has been pending both in state court and here, as well as, the length of time that has elapsed since the filing of the motion, the Court finds that Plaintiff has had ample opportunity to secure a certificate of merit, seek leave of the court to amend her complaint yet again, avail herself of the statutory exception or take any action to comply with the requirements of the MPLA. Instead, Plaintiff has taken no action, including, foregoing a defense of Primecare's motion.   The time for Plaintiff's action has long passed.   Plaintiff has not demonstrated compliance with the MPLA. Consequently, Primecare's motion to dismiss Plaintiff's Amended Complaint should **be granted**.[3]

*V.*

Next, the Court will consider Primecare's challenge of WVCFA's Third-Party Complaint.

---

3    Given this disposition, the Court need not make any finding concerning Primecare's argument that it was not timely served with the Amended Complaint.

(*See* Documents 16-17).   Primecare alleges that WVCFA's asserted claims against it are:

> based solely on the alleged tortuous acts and/or omissions of
> PrimeCare in the context of the care and treatment the decedent was
> provided and the contract entered into between PrimeCare and
> [WVCFA] for the provision of medical services in all regional jails
> in West Virginia.   Therefore, [WVCFA]'s Third Party Complaint
> is governed by the MPLA and [WVCFA] is required to comply with
> the pre-suit procedural requirements of the MPLA.

(Mot. to Dismiss Third-Party Compl., ¶ 9.)   According to Primecare, the MPLA "applies to any liability for damages for any tort or breach of contract based on health care services rendered, or which should have been rendered, to a patient."   (Memorandum of Law in Support of Motion to Dismiss Defendant/Third-Party Plaintiff West Virginia Regional Jail and Correctional Facility Authority's Third-Party Complaint Against Primecare of West Virginia, Inc. on Behalf of Third-Party Defendant, Primecare Medical of West Virginia, Inc. and Alternative Motion for Summary Judgment ("Primecare's Third-Party Mem.") (Document 17) at 4.)   In opposition, WVCFA asserts that Primecare has misunderstood its claim.   WVCFA argues that it has not asserted a medical malpractice claim and should not be bound to comply with the MPLA's pre-filing requirements.   This Court agrees.

The West Virginia Supreme Court of Appeals has concluded that "the determination of whether a cause of action falls within the MPLA is based upon the factual circumstances giving rise to the cause of action, not the type of claim asserted."   *Blankenship v. Ethicon, Inc.*, 656 S.E.2d 451, 454 (W. Va. 2007).   The court further explained that it is the "particular facts of a case [that] will impact the applicability of the [MPLA].   For instance, where the allegedly offensive action was committed within the context of rendering of ['health care,'] the statute applies. Where, however, the action in question was outside the realm of the provision of ['health care,']

the statute does not apply." *Blankenship*, 656 S.E.2d at 457-58 (citing *Gray*, 625 S.E.2d at 332).

Consequently, it is not material that a plaintiff does not plead a claim as being governed by the

MPLA. Instead, the West Virginia Supreme Court of Appeals has instructed that if the alleged act

or omissions are committed by a health care provider within the context of the rendering of "health

care" as defined by the W. Va. Code § 55-7B-2(e), the MPLA will apply regardless of how the

claim is pled.   (*Blankenship*, 656 S.E.2d at 458.)   The MPLA defines "health care" as "any act or

treatment performed or furnished, or which should have been performed or furnished, by any

health care provider, for, to or on behalf of a patient during the patient's medical care, treatment or

confinement."   W. Va. Code § 55-7B-2(e).[4]

In the case *sub judice*, a fair reading of WVCFA's claim reveals that it is one for

indemnification and contribution which is a claim of relief grounded upon the purported contract

entered into between WVCFA and Primecare.   A provision of that contract purportedly allows for

the indemnification of WVCFA upon the arising of certain claims, losses or failures of Primecare.

A cursory reading of the pleading indicates that the WVCFA is merely seeking to avail itself of the

contractual, statutory or common law rights to enforce the contracted-for benefit.   WVCFA's

claim against Primecare is not based on Primecare's rendering health care to WVCFA, but rather

Primecare's liability to WVCFA relative to Primecare's rendering health care to another.   The

issue as between Primecare and WVCFA is one of a contractual obligation.

Moreover, Primecare has not cited to any authority for the proposition that an

indemnification claim may be included within the definition of "medical professional liability"

---

4    In context, this term is used in the definition for "medical professional liability" which is defined as "any liability
for damages resulting from the death or injury of a person for any tort or breach of contract based on health care
services rendered, or which should have been rendered, by a health care provider or health care facility to a patient."
W. Va. Code § 55-7B-2(i).

actions.   This Court finds such a claim suspect, especially, whereas in this case the Defendant/Third-Party is seeking the benefit of a matter wholly separate from the aggrieved injury or the health care services of which the Plaintiff complains.   West Virginia courts have considered examples of the types of conduct that would be outside the scope of the MPLA.   (*See R.K. v. St. Mary's Med. Ctr., Inc*., 735 S.E.2d 715, 726 (W.Va. 2012) ("improper disclosure of medical records[] does not fall within the MPLA's definition of 'health care,' and, therefore, the MPLA does not apply."); *Boggs v. Camden-Clark Mem. Hosp. Corp*., 609 S.E.2d 917, 924 (W. Va. 2004) (finding that MPLA did not apply to claims for fraud, negligent hiring and retention, destruction of records, outrage, and spoliation of evidence).   Further, the West Virginia Supreme Court has stated that the MPLA is not applicable to claims "that may be contemporaneous to or related to the alleged act of medical professional liability." *Boggs*, 609 S.E.2d at 924.   Just as the *Boggs* court explained, "application of the MPLA to non-medical malpractice claims would be a logistical impossibility.   No reputable physician would sign a certificate of merit for a claim of fraud or larceny or battery; how could such a certificate of merit be helpful or meaningful?"   (*Id*. at 924.) The same could be said about an indemnification and/or contribution claim.   The facts of this case clearly reveal that Primecare and WVCFA are purported parties to a contract – it is a provision of that contract that is at issue in the Third-Party Complaint.   These facts do not invoke the applicability of the MPLA statute since they are outside the realm of the provision of medical services, but rather the result of a contract entered into by the parties.   Primecare seeks an expansive reading of the MPLA, a reading that is constrained by the purpose of the MPLA. In this case, an indemnification claim does not require application of the MPLA any more than the *Boggs'* claims of fraud, negligent hiring or spoliation of evidence. WVCFA's claim is not a medical

15

malpractice action and WVCFA was not required to adhere to the MPLA's pre-filing requirements. Consequently, Primecare's motion to dismiss should be denied.

*VI.*

Finally, the Court turns to WVCFA's motion, wherein it moves the Court to grant summary judgment enforcing the terms of the indemnification provision included in the purported contract between it and Primecare.   The relevant indemnification clause provides that:

> The Vender agrees to indemnify, defend, and hold harmless the State and the Agency, their officers, and employees from and against (1) Any claims or losses for services rendered by any subcontractor, person or firm performing or supplying services, materials or supplies in connection with the performance of the contract; (2) Any claims or losses resulting to any person or entity injured or damaged by the Vender, its officers, employees or subcontractors by the publication, translation, reproduction, delivery, performance, use or disposition of any data used under the contract in a manner not authorized by the contract, or by Federal or State statutes or regulations; (3) Any failure of the Vender, its officers, employees or subcontractors to observe State and Federal Laws, including but not limited to labor and wage laws.

(WVCFA's Resp. Ex. B, Portion of Purported Contract between WVCFA and Primecare (Document 20-1) at 5.)   WVCFA seeks an order directing Primecare to "indemnify and hold [it] harmless for any and all losses, damages, and costs incurred in defending this lawsuit [and] . . . a declaration that any judgment issued in the Plaintiff's favor against [WVCFA] in this case must be satisfied by Primecare in accordance with the express terms of the indemnification provisions of the Contract."   (WVCFA's Resp. at 7.)   WVCFA contends that this clause is unambiguous and that it does not require it "to show [that] it is or would *actually* be liable to the Plaintiff[.]"   (*Id*. at 8.)   Instead, WVCFA states it only has to put Primecare on notice of Plaintiff's claim, show its potential liability and provide Primecare an opportunity to participate in settlement or resolution of

16

the matter. (*Id*.)   To demonstrate its entitlement to indemnification, WVCFA argues that Plaintiff

has disclosed in discovery responses that it was a nurse who told the decedent that "they [would]

tell him when he need[ed] to go to the hospital" and that nurses are employed by Primecare. (*Id*.at

9.)   WVCFA further argues that it "can only defend the actions of the Regional Jail Authority

employees . . . [not] the actions of nurses employed by Primecare." (*Id*.)   As a result, WVCFA

asserts that the indemnification clause was intended to cover instances of injuries resulting from

the actions of Primecare and that no genuine disputes of material facts exist to preclude

enforcement of the clause.

In opposition, Primecare contends that Plaintiff has asserted in discovery responses details

about the events on January 20, 2007, when the decedent died, that indicate actions or inactions by

persons employed by WVCFA.   Primecare also contends that Plaintiff has made specific

allegations against WVCFA in her complaint and that WVCFA is not entitled to indemnification

for damages or injuries caused as a result of its own actions or inactions. (Primecare Medical of

West Virginia, Inc.'s Response in Opposition to Defendant/Third-Party Plaintiff West Virginia

Regional Jail and Correctional Facility Authority's Cross Motion for Summary Judgment

("Primecare's Opp'n") (Document 23) at 5-6.)   Additionally, Primecare argues that WVCFA is

attempting to obtain indemnification from its own actions by seeking an award of indemnification

as to "all losses, damages and costs incurred in defending this lawsuit." (*Id*. at 6.)   In its reply,

WVCFA disputes this contention and argues that in its motion it is only seeking relief that it is

legally entitled to by the express terms of the indemnification clause.  (Defendant/Third-Party

Plaintiff, West Virginia Regional Jail and Correctional Facility Authority's Reply to Primecare of

West Virginia, Inc.'s Response to its Cross Motion for Summary Judgment (Document 24) at 1-2.)

17

The Court has reviewed the disputed indemnification clause, Plaintiff's allegations as stated in her complaint, the Third-Party Complaint, as well as the parties' exhibits, and finds that WVCFA's motion is premature to the extent it seeks an order requiring Primecare to indemnify it for losses based upon liability that has not been found.   Plaintiff has alleged that WVCFA's own actions, in addition to those of Primecare, resulted in the harm suffered in this case.   Given the thrust of the asserted allegations, and the responses made in discovery, a jury will have to apportion liability among WVCFA and Primecare and award damages, if any, based on that apportionment.   A jury could find that the actions of WVCFA resulted in the harm disputed in this case.   In such a case, WVCFA would not be entitled to the loss or defense of the Plaintiff's claims. Therefore, the Court finds that a determination based upon the indemnification clause at this juncture of litigation is premature. WVCFA is not prejudiced by this finding inasmuch as it is required to defend against Plaintiff's allegations made directly against it.   Consequently, the Court finds that WVCFA is not entitled to summary judgment.

*VII.*

For the reasons stated above, the Court does hereby **ORDER** that the Motion to Dismiss Plaintiff's Amended Complaint On Behalf of Defendant, Primecare Medical of West Virginia, Inc. (Document 14) be **GRANTED**.   Plaintiff's claim against Primecare Medical of West Virginia, Inc., is **DISMISSED WITHOUT PREJUDICE**.

The Court further **ORDERS** that the Motion to Dismiss Defendant/Third-Party Plaintiff West Virginia Regional Jail and Correctional Facility Authority's Third-Party Complaint Against Primecare of West Virginia, Inc. on Behalf of Third-Party Defendant, Primecare Medical of West Virginia, Inc. and Alternative Motion for Summary Judgment (Document 16) be **DENIED**.

18

Lastly, the Court **ORDERS** that Defendant/Third-Party Plaintiff West Virginia Regional Jail and Correctional Facility Authority's Response to Third-Party Defendant Primecare of West Virginia, Inc.'s Motion to Dismiss and Cross Motion for Summary Judgment (Document 20) be **DENIED AS PREMATURE**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:   February 25, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

19